UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE EX PARTE APPLICATION OF
DILIGENCE GLOBAL BUSINESS
INTELLIGENCE S.A., *pursuant to 28
U.S.C. § 1782 to conduct discovery for
use in foreign proceedings*

21-MC-401 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

On April 19, 2021, Diligence Global Business Intelligence SA ("DGBI") filed an *ex parte* application for an order enabling it to subpoena Michael Holtzman, a New York resident and public relations professional. DGBI sought the subpoena pursuant to 28 U.S.C. § 1782, which governs the provision of "[a]ssistance to foreign and international tribunals and to litigants before such tribunals." For the reasons that follow, DGBI's application is denied.

**I.    Background**

DGBI is a private investigations company based in Switzerland. (Dkt. No. 4 ¶¶ 2–3.) In January 2019, DGBI opened an investigation into the "allegations of corruption and money laundering in connection with the 2022 World Cup in Qatar." (Dkt. No. 4 ¶ 4.) In February 2019, DGBI learned of two individuals connected to Qatar's World Cup bid from an article run in the New York Times. (Dkt. No. 4 ¶¶ 5–10.) These two individuals were Michael Holtzman and Ghanem Mohammed Zaki Nuseibeh, the director of a United Kingdom-based consultancy. (*Id.*) Based on the New York Times article, DGBI began researching Nuseibeh and surveilling him in the United Kingdom. (Dkt. No. 4 ¶¶ 11–12.) As a part of their surveillance operations, DGBI allegedly broke into Nuseibeh's mailbox, tailed and photographed him without his consent, obtained his private communications, and placed a recording device outside of his office. (Dkt. No. 4-5 at 2.)

1

In September 2020, Nuseibeh discovered DGBI's efforts to surveil him. (Dkt. No. ¶ 13.) Nuseibeh retained counsel, who, in October 2020, wrote a letter to DGBI charging that DGBI had committed "serious breaches of [Nuseibeh's] privacy and data rights and a course of conduct amounting to harassment." (Dkt. No. 4-2.) The letter demanded that DGBI cease surveilling Nuseibeh. (*Id*.)

In response to the October 2020 letter, DGBI initiated an action in Swiss courts, seeking a declaratory judgment that "it had conducted its surveillance within the bounds of English law." (Dkt. No. 4 ¶¶ 15–16.) Nuseibeh's counsel then sent two letters requesting information from DGBI regarding its surveillance and invoking Nuseibeh's rights under the European Union's General Data Protection Regulation. (Dkt. No. 4-4; Dkt. No. 4-5.) The second letter was entitled "**LETTER BEFORE CLAIM**." (Dkt. No. 4-5.)

DGBI now seeks information from Holtzman that it contends will show that its surveillance of Nuseibeh was "justified." (Dkt. No. 7 at 3.) In particular, DGBI requests all documents and communications concerning: (1) Holtzman's and other entities' relationship with Nuseibeh, his consultancy, or his counsel "that relate in any way to Qatar's 2022 World Cup Bid"; (2) "Holtzman's contacts and communications with Nuseibeh after [he gave an] interview on the BBC"; (3) "Holtzman [sic] reported offer to provide information relating to Qatar's 2022 World Cup Bid in exchange for US$1 million"; (4) "Holtzman's meeting in New York with Mr. Nuseibeh and [his counsel] in April and/or May 2018"; (5) "any payments made to Mr. Holtzman that relate in any way to the provision of information of information [sic] relating to Qatars [sic] 2022 World Cup bid"; and (6) Holtzman's or other entities' "receipt of US$1 million" from Nuseibeh, his consultancy, or his counsel. (Dkt. No. 1-1 at 7–8.)

2

**II.     Discussion**

Pursuant to 28 U.S.C. § 1782, the "district court of the district in which a person resides or is found may order him to give testimony . . . or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." Before issuing such an order, a district court must confirm that all three statutory elements of § 1782 are satisfied. Namely, a district court must consider whether: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

DGBI's § 1782 application falters on the second prong of the Court's inquiry. As the Second Circuit has explained, "a request that fails to show that the materials sought will be of any use in the foreign proceeding [will] not satisfy the 'for use' requirement." *Mees v. Buiter*, 793 F.3d 291, 299 n.10 (2d Cir. 2015). A successful § 1782 application should explain or allow a district court to infer how the discovery sought will "increase [the applicant's] chances of success" in the foreign proceeding. *Id*. at 299. This is not to say that district courts should "try to glean the accepted practices and attitudes of other nations" and determine the merits of an applicant's legal arguments or the admissibility of the evidence sought. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099–100 (2d Cir. 1995); *Brandi-Dohrn*, 673 F.3d at 77. Still, an applicant must do more than show that it "can furnish information *in the hope* that it might be used" abroad. *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 121 (2d Cir. 2015) (emphasis in original). It is not enough for an applicant to show that the information sought is merely "relevant or interesting." *Id*.

3

Here, DGBI has offered nothing to suggest that yet-private information, beyond DGBI's reach, would benefit the Swiss proceedings or any proceedings in England. Although DGBI suggests that Holtzman's testimony and documents could help it "justify" its earlier surveillance of Nuseibeh, it provides no foreign authorities indicating that previously unlawful surveillance can be rendered lawful by subsequently obtained evidence. In the absence of such authorities, DGBI's proposed use of the discovery sought — which is akin, in some ways, to an attempt to reverse-engineer probable cause from the fruit of an unlawful search — stretches credulity. DGBI has not met the demands of § 1782.

Moreover, even if the three statutory requirements were met, the Court would discretionarily deny DGBI's § 1782 application. District courts may discretionarily deny a § 1782 application when they "suspect[] that the discovery is being sought for the purposes of harassment." *Brandi-Dohrn*, 673 F.3d at 81. "A request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials." *Mees*, 793 F.3d at 299 n.10 (internal quotation marks and citation omitted). DGBI's subpoena seeks a broad range of information relating to Qatar's World Cup bid. Not all of this information clearly bears on Holtzman's relationship with Nuseibeh, such as DGBI's request for "[a]ll documents and communications concerning any payments made to Mr. Holtzman that relate in any way to the provision of information of information [sic] relating to Qatars [sic] 2022 World Cup bid." (Dkt. No. 1-1 at 8.) Based on the breadth of the subpoena and DGBI's general investigation into the allegations of corruption surrounding the World Cup bid, the Court concludes that DGBI's § 1782 application was designed primarily for the benefit its overarching investigation, not any

4

present or impending litigation. In other words, the § 1782 application was brought in bad faith or unreasonably seeks irrelevant materials.

### III. Conclusion

For the foregoing reasons, DGBI's § 1782 application is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 1 and to close this case.

SO ORDERED.

Dated: May 27, 2021
      New York, New York

                                                      J. PAUL OETKEN
                                            United States District Judge

5